**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONTAYE JONES,

                Petitioner,             Case Number: 15-CV-11249

v.                                   HONORABLE GERSHWIN A. DRAIN
                                   UNITED STATES DISTRICT JUDGE

THOMAS WINN,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Dontaye Jones filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Jones is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of a firearm, Mich. Comp. Laws § 224f, resisting a police officer, Mich. Comp. Laws § 750.81d, receiving and concealing a stolen firearm, Mich Comp. Laws § 750.535b, and three counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  He argues that his convictions were obtained in violation of his constitutional rights because: trial counsel was ineffective for failing to object to joinder of the co-defendants for trial; insufficient evidence supported firearms-related convictions; the judgment of sentence is inaccurate; Double Jeopardy violation; and trial court improperly imposed consecutive sentences.  Respondent argues that the claims are meritless.  The Court denies the petition.

## I.    Background

Petitioner's convictions arise from a traffic stop on June 18, 2010, in Saginaw,

Michigan.  The Michigan Court of Appeals summarized the testimony presented at trial

as follows:

> At about 3:30 a.m., Michigan State Police Officer Paul Oster attempted to
> stop a vehicle because the passenger headlight was not working. Oster
> turned on the flashing red light on his vehicle and directed two spotlights
> at the vehicle he intended to stop. Oster pulled up behind the vehicle at a
> stop sign, and once the vehicle turned, Oster activated his vehicle's siren.
> The vehicle Oster was pursuing accelerated. Oster observed defendant in
> the backseat of the vehicle moving from the right to the center and leaning
> forward. Oster eventually pulled along the side of the vehicle he was
> pursuing and intentionally struck the vehicle with his patrol vehicle,
> causing it to spin and eventually stop. Oster observed two firearms thrown
> from the vehicle as it was stopping. The firearms were identified as a
> .45-caliber firearm and a 9-millimeter firearm. A .357-caliber firearm was
> discovered in the vehicle between the middle pillar and the front
> passenger seatbelt; during the trial an officer testified that the firearm was
> primarily in the backseat of the vehicle.  Two of the firearms were
> identified as firearms that were reported stolen, the serial number on one
> of the firearms was scratched off making that firearm unidentifiable.
>
> Defendant immediately ran from the scene after the vehicle stopped.
> Another officer chased defendant and eventually arrested him. Police
> found a .45-caliber magazine with bullets in it and a handful of 9-millimeter
> bullets in defendant's pockets.  Defendant was charged with carrying a
> concealed weapon, felon in possession of a firearm, resisting a police
> officer, receiving and concealing a stolen firearm, and three counts of
> felony-firearm. Defendant's jury trial began on October 13, 2010, and the
> jury convicted defendant of the charged crimes on October 15, 2010.

*People v. Jones,* No. 301651, 2012 WL 593136, *2 (Mich. Ct. App. Feb. 23, 2012).

Petitioner was tried jointly in Saginaw County Circuit Court with the other

individuals in the vehicle.  He was convicted and sentenced as a fourth habitual

offender as follows: 76 months to 18 years' imprisonment for carrying a concealed

weapon, 76 months to 18 years' imprisonment for being a felon in possession, 76

months to 15 years' imprisonment for resisting a police officer, 76 months to 18 years' imprisonment for receiving and concealing a firearm, and 2 years' imprisonment for each of three felony-firearm convictions. These sentences were imposed consecutive to a sentence of 200 months to 50 years for an unrelated unarmed robbery conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. His appeal was consolidated with an appeal of right from the conviction for unarmed robbery. In his appeal of right in this case, Petitioner raised these claims: (i) ineffective assistance of counsel; (ii) insufficient evidence; (iii) OV-13 incorrectly scored; and (iv) sentences for carrying a weapon in a vehicle and felony firearm should have been imposed to run concurrently. The Michigan Court of Appeals held that Petitioner's carrying a concealed weapon sentence should have been imposed to run concurrently, rather than consecutively to his sentence for felony firearm. *Jones*, 2012 WL 593136 at *6. The Court remanded for resentencing and correction of the judgment of sentence to reflect that the carrying a concealed weapon sentence should run concurrently with the felony-firearm conviction. *Id.* at *7. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in all other respects. *Id.*

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised these two claims: ineffective assistance of counsel and insufficient evidence. The Michigan Supreme Court denied leave to appeal. *People v. Jones*, 492 Mich. 856 (Mich. July 21, 2012).

The trial court resentenced Petitioner on August 27, 2012, to concurrent sentences of 45 months to 18 years for carrying a concealed weapon, felon in possession of a firearm, and receiving or concealing stolen firearm; and 45 months to

3

15 years for resisting or obstructing a police officer. Petitioner's sentence for carrying a concealed weapon was to run concurrently with the sentences for felony-firearm, and his remaining sentences to run consecutively to the sentences for felony firearm. *People v. Jones*, No. 312510, 2013 WL 6508825, *1 (Mich. Ct. App. Dec. 12, 2013). One month later, the trial court issued a corrected judgment of sentence clarifying that the sentences were again to be served consecutively to the sentence in the robbery case. *Id.*

Petitioner filed an appeal of right from his amended judgment of sentence. He raised these claims: (i) the amended judgment of sentence incorrectly reflects a minimum sentence of 76 rather than 45 months; (ii) Double Jeopardy violation; and (iii) trial court abused its discretion in making sentences consecutive to the unarmed robbery case. The Michigan Court of Appeals found the amended judgment of sentence incorrectly stated the minimum sentence and remanded for correction of that error. *Id.* at *3. In all other respects, the Court of Appeals affirmed Petitioner's sentence. The trial court corrected the clerical error at a hearing on January 15, 2014. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Jones*, 497 Mich. 852 (Mich. Sept. 2, 2014).

Petitioner then filed the pending habeas corpus petition. He raises these claims:

    I.    Defense trial counsel was constitutionally ineffective in failing to object to joinder of the co-defendants for trial without separate juries, where counsel for one of the acquitted co-defendants had argued that appellant was the only person making movements while the police were behind the vehicle in which appellant and the two co-defendants were riding, and that

4

appellant knew he had the guns and tried to get rid of them.

II.     Due process requires vacating appellant's firearms related convictions
where the prosecutor presented legally insufficient evidence that appellant
constructively possessed the recovered firearms.

III.    The trial court should be ordered to file a corrected judgment of sentence
and commitment to Department of Corrections changing the minimum
sentence of 76 months for count, 3, 4, 6, and 10 to a minimum sentence of
45 months, which was the minimum sentence actually articulated by the
judge at the time of the August 27, 2012 resentencing, in order to conform
the judgment of sentence to what actually took place at the resentencing.

IV.     The increase in the defendant's sentence, as ordered by the trial court
weeks after the resentencing (by making the sentence in this case
consecutive to that in another case), is a violation of the United States and
Michigan constitution prohibitions against double jeopardy (multiple
punishment) and must be changed to reflect the actual sentence imposed
by the judge at the time of resentencing on August 27, 2012 – when this
case was not made consecutive to the unarmed robbery case.

V.      The trial court abused its discretion by making the sentence in this case
consecutive to the unarmed robbery case.

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA").  Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

(1)     resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

5

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of

6

whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**III.    Discussion**

**A.    Ineffective Assistance of Counsel Claim**

Petitioner's first claim for habeas corpus relief concerns his defense attorney's failure to move for separate trials or separate juries from those of his co-defendants. Petitioner was jointly tried with the two other individuals in the vehicle.  The Michigan Court of Appeals held that counsel was not deficient in failing to move to sever.  The Michigan Court of Appeals' opinion was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

7

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),

governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258

(6th Cir. 2005). To show a violation of the Sixth Amendment right to effective

assistance of counsel, a petitioner must establish that his attorney's performance was

deficient and that the deficient performance prejudiced the defense. *Strickland*, 466

U.S. at 687. An attorney's performance is deficient if "counsel's representation fell

below an objective standard of reasonableness." *Id.* at 688. The defendant must show

"that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of

counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has

"declined to articulate specific guidelines for appropriate attorney conduct and instead

[has] emphasized that the proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510,

521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient

performance and prejudice, "it cannot be said that the conviction [or sentence] resulted

from a breakdown in the adversary process that renders the result unreliable." *Id.* at

687.

8

Petitioner focuses his argument that counsel was ineffective on closing arguments. He acknowledges that his co-defendants did not initially present antagonistic defenses, with each defense attorney arguing in opening statements that each respective defendant did not possess or know about the firearm in the vehicle. However, in closing argument, counsel for co-defendant Gary Davis argued that Petitioner was aware of the firearms in the vehicle. The Michigan Court of Appeals held that counsel was not deficient for failing to anticipate this development:

> A defendant does not have an absolute right to a separate trial. *People v. Hoffman*, 205 Mich.App 1, 20; 518 NW2d 817 (1994). Indeed, there is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration. ... Joinder of distinct criminal charges is permitted against multiple defendants where "(1) there is a significant overlapping of issues and evidence, (2) the charges constitute a series of events, and (3) there is a substantial interconnectedness between the parties defendant, the trial proofs, and the factual and legal bases of the crimes charged." *People v. Missouri*, 100 Mich.App 310, 349; 299 NW2d 346 (1980).
>
> Severance should be granted if the offered defenses of joined defendants are antagonistic or mutually exclusive. ... In order to require severance, defenses must be both inconsistent and mutually exclusive or irreconcilable. *People v. Cadle*, 209 Mich.App 467, 469; 531 NW2d 761 (1995). A defense is antagonistic when it appears that a codefendant may testify to exculpate himself and to incriminate the defendant. *Hoffman*, 205 Mich.App at 19–20. ... A conclusory statement of antagonistic defenses without affidavits defining the inconsistencies between them is insufficient to establish that the defenses are irreconcilable. ...
>
> During closing argument defense counsel for one of the codefendants asserted that it was defendant who possessed a firearm.[2] Before closing argument it was not evident that defendant's codefendants were going to inculpate him. Both defendant and his codefendants argued in opening statements that they did not know about or possess the recovered firearms. There was no testimony that any of the three was seen with the firearms, just that two guns were thrown from the passenger side of the car and one was found stuck in the rear of the front seat. Accordingly, the defenses were not recognizably irreconcilable when trial began. Therefore, it is unlikely that defendant would have been able to establish the need to sever his trial. Because it is likely that a motion for severance would

9

have been granted before trial, defense counsel's performance was not deficient. *People v. Darden*, 230 Mich.App 597, 605; 585 N.W.2d 27 (1998) (Defense counsel is not ineffective for failing to make a frivolous request).

Further, defendant has not overcome the presumption that defense counsel's decision to not object to a joint trial was a matter of sound trial strategy that this Court will not second guess with the benefit of hindsight. *People v. Matuszak*, 263 Mich.App 42, 58; 687 N.W.2d 342 (2004). Defense counsel could have reasonably determined that joining the trials gave him the best opportunity to demonstrate reasonable doubt as to whether defendant possessed the weapons. Therefore, we conclude that defendant has failed to establish that defense counsel was ineffective for failing to move for severance.

[2]Defendant and his two co-defendants all faced slightly different charges, but they were all charged with CCW, M.C.L. 750.227, receiving and concealing a stolen firearm, M.C.L. 750.535b, and felony-firearm, M.C.L. 750.277b.

*Jones*, 2012 WL 593136 at *3-4.

As the state court noted, at the outset the defendants did not present antagonistic defenses and defense counsel may have concluded that a joint trial may have helped to create reasonable doubt as to which defendant possessed the weapons. In the absence of antagonistic or mutually exclusive defenses, a request for severance would have been denied under state law. Petitioner, therefore, cannot show he was prejudiced by trial counsel's decision not to move for severance. The Michigan Court of Appeals' decision was a reasonable application of *Strickland*.

10

B.     **Sufficiency of the Evidence Claim**

Next, Petitioner argues that insufficient evidence was presented to convict him of the firearms-related charges (CCW, concealing a stolen firearm, felon in possession, and felony firearm) because the evidence did not show that he possessed a firearm.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson,* 443 U.S. at 319.  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not

11

unreasonable." *Id.*

Petitioner argues that the evidence presented was insufficient to establish that he possessed a firearm. All four of Petitioner's firearms-related convictions required proof that he possessed or constructively possessed a firearm. *Jones*, 2012 WL 593136 at *5. Under Michigan law, "there is constructive possession of a firearm where the location of the weapon is known to defendant and it is reasonably accessible to the defendant." *Id.* at *6. The Michigan Court of Appeals held that the evidence presented at trial established Petitioner's constructive possession of the firearms. The state court based its holding on this evidence: two firearms were thrown from the vehicle while it was being pursued by a state police officer; when Petitioner was apprehended, he had ammunition in his pockets that matched the caliber of the weapons thrown from the vehicle; a firearms expert matched the ammunition to the discarded firearms; and a third firearm that was found inside the vehicle would have been easily accessible from where Petitioner was seated in the vehicle. *Id.*

"A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 132 (2010), (quoting *Jackson*, 443 U.S. at 326). The decision of the Michigan Court of Appeals easily passes scrutiny under the deferential AEDPA standard, as the appellate court applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.

### C.    Claim for Correction of Minimum Sentence

12

Petitioner's third claim for habeas relief concerns an error in the amended judgment of sentence issued after the initial remand from the Michigan Court of Appeals.  The amended judgment of sentence reflected a minimum sentence of 76 rather than 45 months.  During Petitioner's second claim of appeal, the prosecutor conceded that the amended judgment of sentence was in error and the Michigan Court of Appeals agreed.  The Court of Appeals remanded the matter for a correction of the judgment of sentence to reflect a minimum sentence of 45 months.  This claim is therefore moot.

### D.    Consecutive Sentence-Related Claims

Finally, Petitioner's fourth and fifth claims for habeas relief focus on the consecutive nature of his sentences.  He argues that his right to be free from double jeopardy was violated and the trial court abused its discretion when it sentenced him to serve the sentences in this case consecutively to the sentence for unarmed robbery.

The amended judgment of sentence issued by the trial court after remand by the Michigan Court of Appeals (in addition to including an incorrect minimum sentence for the firearms-related convictions) omitted language that the sentences in this case were to be served consecutively to the sentence in the unarmed robbery case.  *Jones*, 2013 WL 6508825 at *1.  After an inquiry from the Michigan Department of Corrections, the trial court issued a corrected judgment of sentence specifying that the sentences were to be served consecutively to the sentence in the unarmed robbery case.  Petitioner argues that the addition of this language violated the Double Jeopardy Clause because it subjected him to multiple punishments for the same crime.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . .

13

2:15-cv-11249-GAD-DRG   Doc # 12   Filed 11/15/16   Pg 14 of 16   Pg ID 895

shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Michigan Court of Appeals found no double jeopardy violation. The state court noted that the corrected judgment of sentence merely corrected a clerical error. Petitioner's original firearm-related sentences in this case were imposed consecutive to his unarmed robbery sentence. The Michigan Court of Appeals held that, although the amended judgment of sentence failed to specify the sentences would be consecutive, it was clear from the resentencing hearing that the trial court intended to maintain the consecutive nature of these sentences, and that the corrected judgment of sentence corrected a clerical error but did not alter the actual term of imprisonment. *Jones*, 2013 WL 6508825 at *2. The state court's conclusion was reasonable. The record clearly supports the Michigan Court of Appeals' finding that the corrected judgment of sentence corrected a clerical error. Petitioner was not subjected to multiple punishments for the same offense by the correction of a clerical error.

In addition, Petitioner argues that the trial court abused its discretion in imposing consecutive sentences, resulting in a disproportionately long period of incarceration. The Supreme Court has held that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991), quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003), citing *Harmelin*, 501 U.S. at 999. "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme

14

disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008), quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants."  Williams v. New York, 337 U.S. 241, 245 (1949).  Petitioner's sentences fall within the statutory maximum for his crimes.  In addition, while "concurrent sentencing is the norm" in Michigan, consecutive sentencing may be imposed "if specifically authorized by statute."  *People v. Brown*, 220 Mich. App. 680, 682 (Mich. Ct. App. 1996).  Mich. Comp. Laws § 768.7b(2)(a) specifically authorizes a court to impose consecutive sentences where a person who has been charged with a felony commits a subsequent felony while the charges are pending on the initial felony.  Petitioner committed the crimes at issue in this case while awaiting trial on the unarmed robbery charge.  Therefore, the consecutive nature of Petitioner's sentences is specifically authorized by statute and permitted by the Federal constitution. *See Oregon v. Ice*, 555 U.S. 160, 165 (2009) (finding that consecutive sentences are constitutionally permissible).  Habeas relief is denied on these claims.

## IV.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

15

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V.     Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


/s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

DATE: November 15, 2016

16